UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:                                              Chapter 11 (Subchapter V)

    PARS BRONX REALTY LLC,                   Case No.: 22-40714-ess

                      Debtor.
----------------------------------------------------------x

**ORDER UNDER SECTIONS 105, 363(a), 363(b), 363(f) and 363(m) OF THE BANKRUPTCY CODE AND RULES 2002, 6004 AND 9004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE: (I) AUTHORIZING THE TRUSTEE TO SELL TO THE STALKING HORSE BIDDER OR TO THE HIGHEST AND BEST BIDDER AT AN AUCTION SALE THE ESTATE'S INTEREST IN THE REAL PROPERTIES KNOWN AS 694 COURTLANDT AVENUE, BRONX, NEW YORK 10451 AND 696 COURTLANDT AVENUE, BRONX, NEW YORK 10451; (II) SCHEDULING A HEARING TO APPROVE SUCH SALE TO THE HIGHEST AND BEST BIDDER; (III) APPROVING CERTAIN BIDDING PROCEDURES; AND (IV) APPROVING THE MANNER AND EXTENT OF NOTICE OF SUCH AUCTION HEARING**

UPON the motion (the "Motion") of Charles N. Persing, CPA, the Subchapter V trustee (the "Trustee") of the Estate of Pars Bronx Realty LLC seeking the entry of an order under sections 363(a), (b), (f) and (m) of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004 and 9004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rule"): (i) authorizing the Trustee's sale of the real properties commonly known as 694 Courtlandt Avenue, Bronx, New York 10451, in the Borough of Bronx, Block: 2401, Lot 1 and 696 Courtlandt Avenue, Bronx, New York 10451, in the Borough of Bronx, Block: 2401, Lot 2 (collectively, the "Properties") to the stalking horse bidder, Magnet Mgmt Development LLC (the "Stalking Horse Bidder"), or to the highest and or best offer received at an auction, free and clear of all liens, claims, encumbrances and other interests (collectively, the "Liens") with such Liens to attach to the proceeds of the sale for good and valuable consideration, substantially in accordance with the terms and conditions set forth herein to the bidder with the highest and or best offer to be considered and

approved by the Court at said hearing; (ii) approving the sale of the Properties to the Stalking Horse Bidder or other successful bidder; (iii) approving the terms and conditions for submitting offers and bidding procedures; (iv) approving the form and manner of notice with respect to the auction hearing; and (v) granting such other and further relief as this Court deems just and proper under the circumstances; and the Motion having come on for a hearing before the Court on July 30, 2023; and there being no opposition to the relief sought or said opposition having been withdrawn or otherwise overruled; and the Trustee having appeared before the Court at the hearing; and Ryan Gentile, Esq. having appeared as counsel to the Debtor; and Charles N. Persing, CPA having appeared in his capacity as the Subchapter V Trustee; and Alex E. Tsionis, Esq., having appeared as counsel to the Trustee; and Marc P. Yaverbaum having appeared as real estate broker to the Trustee; and Nickolas Karavolas, Esq. having appeared as counsel to NYCTL 2021-A Trust; and Nazar Khodorovsky, Esq. having appeared on behalf of the Office of the United States Trustee; and the Court, having considered the Motion and having determined that the Motion should be granted; it is hereby

**ORDERED**, that the Trustee is authorized to sell the estate's interest in the Properties free and clear of all Liens with such Liens to attach to the proceeds of sale with the same validity and with the same priority that existed prior to the sale, pursuant to sections 363(a), (b), (f) and (m) of the Bankruptcy Code at public auction; and it is further

**ORDERED**, that the Trustee is hereby authorized to enter into the contracts of sale with the Stalking Horse Bidder, which are annexed to the Motion; and it is further

**ORDERED**, that the Trustee is hereby authorized and empowered to take those steps necessary to sell the Properties as described herein, to the highest and/or best bidder free and clear

of all Liens with such Liens to attach to the proceeds of sale with the same validity and in the same priority that existed prior to the sale; and it is further

**ORDERED**, that the Trustee shall cause the auction to be advertised on: (i) the website of MYC; and (ii) a publication as chosen by the Trustee in consultation with MYC & Associates, Inc. ("MYC"); and it is further

**ORDERED**, that the following bidding procedures (the "Bidding Procedures") as set forth in the Motion are hereby approved:

A. These terms and conditions of sale ("Terms and Conditions of Sale") are being promulgated in connection with the United States Bankruptcy Court, Eastern District of New York ("Bankruptcy Court") authorized auction sale ("Sale") of the Debtor's real properties commonly known as 694 Courtlandt Avenue, Bronx, New York 10451, in the Borough of Bronx, Block: 2401, Lot 1 and 696 Courtlandt Avenue, Bronx, New York 10451, in the Borough of Bronx, Block: 2401, Lot 2 (collectively, the "Properties"). The seller of the Properties is Charles N. Persing, CPA, Subchapter V Trustee ("Trustee" and/or "Seller") of the estate of Pars Bronx Realty LLC ("Debtor"). The Debtor is a debtor in a Subchapter V Chapter 11 case currently pending in the Bankruptcy Court under the caption and case number set forth above. The Trustee's retained real estate broker and auctioneer ("Auctioneer") is MYC & Associates, Inc. ("MYC"), 1110 South Avenue, Suite 22, Staten Island, New York 10314; Telephone (347) 273-1258; Facsimile (347) 273-1358; email: sales@myccorp.com; and website: www.myccorp.com.

B. The auction sale ("Sale") will take place at a date and time to be determined by the Trustee in consultation with MYC. Under no circumstance shall the Sale take place earlier than sixty (60) days from the date of entry of the Order authorizing the Trustee to conduct the Sale. MYC may not be paid commissions for its services in this matter without filing a fee application with the Bankruptcy Court upon appropriate notice and a hearing.

C. Information regarding the Trustee's sale of the Properties can be obtained by contacting the Trustee's counsel at the telephone number and address set forth herein or by contacting MYC or on the MYC website set forth in paragraph "A" above.

D. The Trustee, in his sole discretion and under his business judgment, has entered into two (2) stalking horse contracts with a potential buyer ("Stalking Horse Bidder") in the aggregate amount of $1,950,000.00 ($1,000,000.00 for 694 Courtlandt and $950,000.00 for 696 Courtlandt) that the Trustee deems to be a reasonable and valid purchase offer (the "Stalking Horse Offer"). The Trustee shall

use the Stalking Horse Offer as the reserve sale price at the Sale, such that the Sale will not tender less than the Stalking Horse Offer at the Sale. **The Properties are being sold as a package.**

E. In order to be considered by the Court and admissible on the date of the Sale Hearing, any competing offer ("Competing Offer") must satisfy the following terms and conditions: (i) a Competing Offer shall provide for a Purchase Price of at least $25,000.00 more than the Purchase Price as provided for in this Agreement; (ii) the Competing Offer shall be substantially similar to the terms and conditions of this Agreement; (iii) a higher or better Competing Offeror must sign these Terms and Conditions of Sale agreeing to be bound by the terms and conditions of this Agreement; (iv) the Competing Offer shall have demonstrated, to the sole satisfaction of the Trustee and his counsel, evidence of its ability to conclude the transaction upon the terms and conditions of this Agreement, without delay; (v) the Competing Offer shall not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror with respect to the Assets that are the subject of this Agreement; (vi) the Competing Offeror shall provide, at least two (2) days before the Sale Hearing, a certified check made payable to Charles N. Persing, CPA, as Trustee, the sum of ten percent (10%) of the proposed purchase price as a down payment; and (vii) in the case of any subsequent competing offer ("Subsequent Competing Offer") received from any party, which may, include, without limitation, the Buyer (after a prior competing bid has been received) which satisfies the conditions set forth above, such Competing Offer shall provide for an aggregate consideration at least $25,000.00 more than the Stalking Horse Bid, but within the discretion of MYC at the Sale to set a lower Subsequent Competing Offer, in excess of that provided by the prior better offer and shall otherwise comply with all conditions of the Agreement.

F. In order to be permitted to bid on the Properties, at least two (2) days prior to the commencement of the Sale, and as a condition to be able to bid at the Sale, each prospective bidder must: (i) register with MYC; (ii) deliver to MYC the original signed Terms and Conditions of Sale; and (iii) tender a bank check in the amount of $100,000.00 ("Qualifying Deposit") made payable to "Charles N. Persing, CPA, as Trustee", which amount shall serve as a good faith deposit against payment of the purchase price by such bidder in the event that such bidder is determined to have made the highest and/or best bid ("Successful Bidder").

G. Within forty-eight (48) hours after conclusion of the Sale, the Successful Bidder of the Properties shall deliver to the Trustee a bank check which amount must be equal to ten (10%) percent of the successful bid, minus the Qualifying Deposit (together with the Qualifying Deposit, the "Deposit"). The Successful Bidder for the Properties must execute, and thereby agree to be bound by: (i) these Terms and Conditions of Sale; and (ii) a Memorandum of Sale. At the conclusion of the Sale, the Trustee, or his representative, will return the Qualifying Deposits to all other bidders. The Trustee, however, shall retain the Qualifying Deposit of the second highest bidder ("Second Bidder") on the terms set forth herein.

H. The Successful Bidder, or its assigns, must close title ("Closing") to the Properties on a date ("Closing Date"), provided title is clear to close, that is within thirty (30) days following the date of entry of a Bankruptcy Court Order approving the Sale, **time being of the essence**. The Closing Date may be extended solely by the Trustee, in his discretion. The Closing shall take place at a location that is to be determined by the Trustee.

I. The Bankruptcy Court, prior to the Closing, may enter an Order confirming the Sale.

J. The Successful Bidder, or its assigns, shall be responsible solely and shall pay any and all New York City, New York State, or other applicable real property transfer taxes incurred by the transfer of the Properties by the Debtor's estate at the Closing. The Successful Bidder, or its assigns, acknowledges that he, she, or it, will be responsible for the completion of any ACRIS forms, if required.

K. In connection with the Closing and Closing Date, the Successful Bidder, or its assigns, is hereby given notice that **Time is of the Essence against the Successful Bidder, or its assigns, and the failure of the Successful Bidder, or its assigns, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the Closing Date, will result in the Seller retaining the Deposit as liquidating damages and the termination of the Successful Bidder, or its assigns, right to acquire the Properties under these Terms and Conditions of Sale**. The Successful Bidder, or its assigns, shall be obligated to close title to the Properties and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assigns, to cancel or avoid his, her, or its, obligation under these Terms and Conditions of Sale other than the Trustee's inability to deliver insurable title to the Properties. Further, the Successful Bidder, or its assigns, must demonstrate, to the satisfaction of the Trustee or the Bankruptcy Court, as the case may be, evidence of his, her, or its, ability to conclude the transaction upon these Terms and Conditions of Sale, without delay. The Trustee reserves the right to reject any bidder/offeror, who the Trustee, in his sole discretion, believes is not financially capable of consummating the purchase of the Properties. **Expenses incurred by the Successful Bidder, or its assigns, or any competing bidder concerning the performance of any due diligence, such as obtaining title reports or environmental inspections, shall be the sole financial responsibility of such bidder and under no circumstances shall the Trustee, or the Debtor's estate, or the Trustee's professionals, be liable or responsible for, or pay, such expenses.**

L. In the event that the Successful Bidder for the Properties, or its assigns, fails to tender the balance of the Purchase Price on the Closing Date, or otherwise perform his, her, or its, obligations under these Terms and Conditions of Sale, the Trustee, at his sole option, shall immediately negotiate the Qualifying Deposit of the Second Bidder and shall be further authorized to sell the Properties to the Second Bidder,

or its assigns, without any further notice or approval of the Bankruptcy Court, without giving credit to the Second Bidder for the Deposit forfeited by the Successful Bidder, and upon such other terms and conditions as the Trustee deems appropriate. Should the Second Bidder, or its assigns, fail to close on the Properties within twenty (20) days of receiving from the Trustee, notice, **TIME BEING OF THE ESSENCE**, (at the address set forth on the bidder registration form) that said Second Bidder is now deemed the Successful Bidder, then the **Sellers shall be: (a) authorized to keep the Qualifying Deposit of the Second Bidder as liquidated damages**; and (b) authorized but not obligated to sell the Properties to the next highest bidder, without any further notice or approval of the Court.

M. The Properties are being sold and delivered free and clear of all liens, claims and encumbrances of whatever kind or nature. To the extent the sale of the Properties includes items of personal property, the transfer shall be "as is" and without warranty, express, statutory, or implied, as to discretion, title, condition, location, quality, fitness or any particular use or purpose or otherwise.

N. The Properties are being sold and delivered **"AS IS", "WHERE IS", "WITH ALL FAULTS"**, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of Sale in such order and priority as they existed immediately prior to the Sale Date, and subject to, among other things: (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof; (e) environmental conditions; and (f) subject to all deed restrictions. By delivering their respective Qualifying Deposits, all bidders acknowledge that they have had the opportunity to review and inspect the Properties, the state of title thereof and laws, rules and regulations applicable thereto, and the form of the Trustee's Deed that the Trustee will execute to convey the Properties, and will rely solely thereon and on their own independent investigations and inspections of the Properties in making their bids. All bidders acknowledge that they have conducted their own due diligence in connection with the Properties, and are not relying on any information provided by the Trustee, MYC or the Trustee's retained professionals.

O. The Properties shall be delivered subject to any and all existing tenancies and occupancies.

P. The Trustee, MYC and the Trustee's retained professionals have not made and do not make any representations or warrantees with respect to the permissible uses of the Properties, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Properties or the Sale, that might be pertinent to the purchase of the Properties, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Properties; (b) the potential

qualification of the Properties for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Properties, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Properties to obtain a change in the zoning or use, or a variance in respect to the Properties; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Properties from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; (e) the current or future use of the Properties; (f) the present and future condition and operating state of any and all machinery or equipment in the Properties and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Properties; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Properties; or (j) the compliance or non-compliance of the Properties with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in the Properties. Each bidder hereby expressly agrees and acknowledges that no such representations have been made, except for the representation as to open permits. The Trustee and his retained professionals shall not be liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Properties, made or furnished by the Trustee or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Trustee unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in a signed writing by the Trustee.

Q. The Trustee shall convey the Properties by delivery of a Trustee's quitclaim deed. The quality of title shall be that which a reputable title insurance company doing business in the State of New York is willing to approve and insure. At the Trustee's option, he may arrange for the issuance of a title insurance policy by a reputable title company, if the Successful Bidder is unable to do so, at the sole cost and expense of the Successful Bidder. The Trustee shall provide all documents required by the Successful Bidder's title company for them to 'omit' any exceptions from the Successful Bidder's title policy.

R. Nothing contained in these Terms and Conditions of Sale shall supersede or alter any provisions of Title 11, United States Code ("Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Bankruptcy Court. To the extent of any conflict between the Bankruptcy Code and/or the Bankruptcy Rules and these Terms and Conditions of Sale, the Bankruptcy Code and/or the Bankruptcy Rules shall govern. All of the terms and conditions set forth in these Terms and Conditions of Sale are

subject to modification as may be directed by the Trustee, or by the Bankruptcy Court. The Trustee reserves the right to modify these Terms and Conditions of Sale at the Sale, or thereafter, to maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court. Any pre-auction change to the Terms and Conditions of Sale will be filed on the electronic case docket in this case.

S. Neither the Trustee, MYC, the Trustee's retained professionals, nor the Debtor's estate, are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy Court.

T. These Terms and Conditions of Sale will be read into the record, or specifically incorporated by reference at the Sale of the Properties. By making a bid for the Properties, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.

U. The Trustee shall be a party to the Sale of the Properties exclusively in his capacity as trustee in bankruptcy and not as an individual. If the Trustee is unable to deliver title to the Properties in accordance with these Terms and Conditions of Sale for any reason whatsoever, his only obligation will be to refund the Deposit to the Successful Bidder (or Second Bidder) and upon such refund the Successful Bidder (or Second Bidder) will have no recourse or claim against the Trustee, the Trustee's retained professionals, or the Debtor's estate.

V. The Trustee reserves his right to withdraw the Properties from the Sale, either prior or subsequent to the auction, for any reason whatsoever, as he deems necessary or appropriate. Notice of any pre-auction withdrawal of the Properties from the Sale will be filed on the electronic case docket in this case.

W. The Sale of the Properties is subject to confirmation by the Bankruptcy Court. The Trustee or the Trustee's attorney shall notify the Successful Bidder whether the Sale is confirmed. Any disputes concerning the Sale shall be determined by the Bankruptcy Court. By participating in the Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case. The Purchaser agrees to cooperate with the Trustee in obtaining Section 363(m) protections in this Order by submitting an appropriate affidavit as to the required elements of that statute. If the Purchaser fails to qualify for such a finding by the Court, Purchaser shall close without those protections.

X. **By making a bid for the Properties, all bidders shall be deemed to have acknowledged having read, and understand, these Terms and Conditions of Sale and have agreed to be bound by them.**

**AND IT IS FURTHER ORDERED**, that in the event that one (1) or more timely, conforming bid, in addition to the bid from the Stalking Horse Bidder, is submitted that meets the

bidding requirements set forth in the Motion by **5:00 p.m. (prevailing Eastern Time) on September 6, 2023**, then MYC & Associates, Inc. ("MYC") shall conduct an auction sale on **September 8, 2023 at 11:00 a.m. (prevailing Eastern Time)** by videoconference using the Zoom platform or other comparable videoconference platform with bidders to be advised by MYC as to how they may access the videoconference; and it is further

**ORDERED**, that the Court will hold a hearing on **September 14, 2023 at 10:30 a.m.** before the Honorable Elizabeth S. Stong to determine whether to approve the sale of the Properties to the successful bidder; and it is further

**ORDERED**, that the September 14, 2023 hearing shall not be held in person but shall be held virtually. Those parties wishing to appear at the hearing shall register using eCourt Appearances. To register, please provide your name, address, e-mail address, telephone number on the hearing date, and if appropriate, the party that you represent. Please be sure to register at least one business day before your hearing. You will receive instructions on how to access the remote hearing via e-mail two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time, and keep your audio and video on mute until your case is called. If you have a CM/ECF account, you may access eCourt Appearances in the "Utilities" menu after logging into CM/ECF. If you do not have a CM/ECF account, you may access eCourt Appearances on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl

**AND IT IS FURTHER ORDERED**, that, notwithstanding anything in this Order or the Motion to the contrary, all Liens shall, to the extent of their validity and in their order of priority, attach to the net proceeds of the auction sale, and such Liens shall remain on the Properties until the Closing Date; and it is further

**ORDERED**, that, on the Closing Date, the Trustee shall pay (or direct payment of) all Liens on the Properties for real property taxes, water and sewer charges and other related charges, including, without limitation, those Liens held by NYCTL 2021-A Trust MTAG (collectively, the "Tax Liens"), in full, including, without limitation, all accrued postpetition interest, fees and other applicable charges, provided, however, that if the Successful Bidder elects to credit bid any portion of the purchase price, such Successful Bidder shall pay the Tax Liens in full, including, without limitation, all accrued postpetition interest, fees and other applicable charges, in cash on the Closing Date; and it is further

**ORDERED**, that, within ten (10) business days of the funds clearing the Trustee's account, and the Trustee having received a final invoice or bill for same, the Trustee shall pay, or direct payment of, all closing costs, statutory closing costs, remaining taxes, remaining liens, and any other costs and fees necessary to close title to the Properties in accordance with the carve-out stipulation entered on March 24, 2023 [Dkt. No. 97]; and it is further

**ORDERED**, that the Clerk of Bronx County, or any other appropriate government office, is hereby directed to accept from the successful bidder, all documents required to record the transfer of the Properties; and it is further

**ORDERED**, that, as agreed by MYC, the commissions of MYC shall be capped at five percent (5%) of the gross auction sale price if sold to a third party and three percent (3%) if sold to Aflux, LLC (the mortgagee herein); and it is further

**ORDERED**, that the proceeds of the auction sale are to be held by the Trustee in a segregated account pending further order of the Court; and it is further

**ORDERED**, that, other than as set forth in this Order, no funds, other than ordinary and customary closing expenses and costs, are to be disbursed without further order of the Court; and it is further

**ORDERED**, that the Trustee is hereby authorized and empowered to take such actions as may be necessary and appropriate to implement the terms of this Order; and it is further

**ORDERED**, that the Trustee shall serve a copy of this Order by regular mail, or if not available, by electronic mail, upon all creditors, any party having filed a notice of appearance and demand for service in this case, parties in interest and any party that has expressed an interest in the Properties, by not later than five (5) days after the date of entry of this Order, and shall file an affidavit of service attesting to service of the Order; and it is further

**ORDERED**, that the Court may retain jurisdiction to resolve any disputes arising or related to this Order and to interpret, implement and enforce the provisions of this Order.



Dated: Brooklyn, New York
July 12, 2023

_____
Elizabeth S. Stong
United States Bankruptcy Judge